Robert Louis Stevenson Apartments, Inc. v. Commissioner.
Robert Louis Stevenson Apartments, Inc. v. Commissioner
Docket No. 95353.
United States Tax Court
T.C. Memo 1964-1; 1964 Tax Ct. Memo LEXIS 334; 23 T.C.M. (CCH) 1; T.C.M. (RIA) 64001; January 3, 1964
*334 Wentworth T. Durant and Wilbur E. Swenson, 812 Tyler St., Amarillo, Tex., for the petitioner. Merrill R. Talpers, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The Commissioner has determined a deficiency in petitioner's income tax for the fiscal year ended September 30, 1960, in the amount of $1,440. The sole question for our decision is the propriety of his determination that a deduction of $7,200 (claimed as compensation paid to petitioner's president and sole stockholder), during the year in issue, was excessive, and that $2,400 was a reasonable allowance for salary or other compensation for personal services actually rendered. Petitioner is a Missouri corporation, organized in 1934. Its income tax returns were filed on a fiscal year basis, ending September 30 in each year, and for the year in issue such return was filed with the district director of internal revenue in Kansas City, Missouri. During the year in issue petitioner owned a single piece of rental property known as the Robert Louis Stevenson apartment building, located at 4804 Jefferson Street, Kansas City, Missouri. It is hereinafter sometimes referred *335 to as subject apartment. Petitioner's business is the owning and operating of this apartment building, which was constructed in 1926, is seven stories in height, has four one-bedroom, unfurnished apartments on each floor, plus one basement apartment, which was occupied by the janitor. Subject apartment is well built and maintained, and has an elevator, but it was not considered to be of the luxury class during the year in issue because of its age and because it was not centrally air conditioned. Mrs. Floy Randal, hereinafter called Floy, and her husband, who has since died, acquired all of petitioner's stock on October 1, 1936, at which time the basis of subject apartment to the corporation was $93,500 for the improvements and $10,000 for the land. At such time, the property was subject to a mortgage obligation in the amount of $67,500, which mortgage had been completely amortized prior to the tax year in issue. Floy's husband died in June of 1954, and on July 12, 1954, Floy was elected president of petitioner and has served in such capacity since. She owned all of petitioner's stock during the year in issue. Since 1952 subject apartment has been managed by Mr. Frank L. Woodward, *336 a realtor specializing in property management. Mr. Woodward has maintained his home in subject apartment since 1937. Mr. Woodward's duties at all relevant times have included the securing of new tenants for subject apartment as needed, checking out their credit standing and references, handling day-to-day complaints, handling the eviction of tenants, determining the amounts of insurance coverage, keeping advised as to local laws and ordinances affecting subject apartment, collecting rents each month and, through his real estate firm of Woodward and Co., paying ordinary bills in connection with operating expenses, maintenance, repairs and employee withholding taxes (but not paying any bill in excess of $100 without prior authorization from Floy), and then remitting the balance monthly to Floy, together with a statement of all collections and disbursements. The fee for such services was five percent of gross rentals, and for the year at issue, such fee was $1,726. At all relevant times, Floy kept petitioner's books and records, entering therein the data supplied by Mr. Woodward, maintained petitioner's two bank accounts, and was the only person authorized to write checks on said *337 accounts. She also did some work in connection with petitioner's income tax returns, which were prepared by a certified public accountant. Since becoming petitioner's president in 1954, Floy has had full ultimate responsibility for making petitioner's business decisions. During 1958, 1959 and 1960, several large new luxury apartment buildings were being planned for and built in the near vicinity of subject apartment. Floy learned of this and determined to upgrade subject apartment to meet the competition and maintain or increase petitioner's rental income. She consulted with an architect and determined to install all new electric kitchens, rewire subject building, sand the floors, enclose the outside porch on each apartment, building up its floor to the floor level of the apartment, install new sliding doors, install electric heaters and new fixtures in bathrooms and redecorate the apartments. This work cost about $2,000 to $2,500 per apartment. It was planned for and done as separate units became vacant in the usual course of business, and as the units were so improved, individual rents were increased. During the year in issue, from three to six apartments were so renovated *338 and changed, and one of these was assigned thereafter (commencing in about July 1960), rent free, to Floy, and occupied by her when she was in Kansas City. In 1960 Floy's apartment would have rented for $125 a month. Prior to his death in 1954, Floy and her husband were quite active in owning and operating businesses and income real estate properties, and Floy has continued to be quite active in these endeavors since that time. Such properties and businesses include the following, located in Amarillo, Texas, unless otherwise noted: Four drugstores and a stockroom (three of these drugstores were traded for the corporate stock in petitioner); A small department store, Hobbs, New Mexico; Berkley Apartments - two buildings containing four furnished units each; A small residential hotel, containing 30 rooms and three apartments; A single family residence, Santa Barbara, California (the record is unclear as to whether this was an income property); A building on Tenth Street, which housed apartments upstairs and five stores downstairs; A building on Fourth Street, housing about nine stores; The Royal Crown bottling works, probably in Amarillo, Texas (the record seems to *339 indicate that this property was disposed of before the year in issue). Floy was active in the management, operation and in keeping books for all of the above businesses and properties and thus acquired experience and became an astute business woman. The record is indefinite and unclear as to which of the above businesses and properties Floy continued to own and operate during the year in issue and as to how much time she spent in connection with these endeavors. The record is also unsatisfactory as to the amount of time Floy spent in connection with petitioner's business, either during the year in issue or during other years. She has, during all relevant times, considered Amarillo, Texas, to be her home and made only about two trips, of unknown duration, to Kansas City during the year in issue. [1] During the year in issue Floy spent most of her time in Amarillo, Texas, and part of her time in Santa Barbara, California. Petitioner has earned gross income (round figures) as follows: (Years ended September *340 30) Fiscal 1957
$32,000
Fiscal 1958
$32,200
Fiscal 1959
$32,000
Fiscal 1960
$33,100 For these years petitioner had and claimed depreciation of: $3,100, $3,200, $3,100 and $3,900. It has paid Floy a salary of $7,200 in each of the years; paid Federal income taxes of $2,400, $2,100, $2,200 and $1,500; paid dividends of $2,100 in fiscal 1956, $10,000 in fiscal 1958, $10,000 in fiscal 1959, and none for the year in issue. Also, for the year in issue, it paid Woodward and Co. a five percent gross rental fee of $1,700; a janitor's salary of $1,700; transferred net income of $3,500 to surplus; and showed net worth at the end of the fiscal year in issue of $85,000. During the year in issue petitioner apparently spent $5,000 for improvement and repairs to subject apartment, but not all of this amount was capitalized. The question of what constitutes reasonable compensation for Floy's services in this case is one of pure fact ( , (C.A. 2, 1951), affirming a Memorandum Opinion of this Court), and the burden is on the petitioner to overcome the presumption of correctness attaching to the Commissioner's *341 determination. Frank L. Woodward qualified as an expert in the real estate management field in Kansas City, having been in that business for many years, and in addition he was entirely familiar with subject apartment, having lived there many years. He was also familiar with Floy's activities as president and sole stockholder of petitioner, having served as resident manager of subject apartment since 1952. Mr. Woodward testified that in his opinion the sum of $7,200 paid to Floy during the year in issue constituted reasonable and just compensation for her services. Considering the length of time Mr. Woodward has operated in the real estate management field, we can assume that he was qualified to give opinion testimony as regards reasonable compensation under the facts here present; but having carefully considered the entire record in this case, and especially the extent of Floy's other activities and the rather inconsiderable amount of time which she spent in connection with petitioner's affairs during the year in issue, we must conclude that petitioner has failed to overcome the presumption of correctness attaching to the Commissioner's determination. Decision will be entered *342 for the respondent. Footnotes
1. Floy testified variously that she made "no more than two" trips tokansas City, and "I think there would be more than two" trips to Kansas City during the year in issue.↩